UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHERYL H. GAONA, | ) |
| | ) CASE NO. C13-0772-RAJ-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) REPORT AND RECOMMENDATION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff Cheryl H. Gaona proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied Plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be AFFIRMED.

//

//

//

REPORT AND RECOMMENDATION
PAGE -1

## FACTS AND PROCEDURAL HISTORY

Plaintiff was born on XXXX, 1959.[1] She has a GED and completed some additional vocational training, and previously worked as a clerical assistant, sandblaster, and manufacturing sander. (AR 214, 240.)

Plaintiff filed an application for SSI July 15, 2009, alleging disability due to depression, post-traumatic stress disorder (PTSD), carpal tunnel syndrome, and compulsive cleaning disorder. (AR 188-97, 202, 210.) She amended her alleged onset date at the administrative hearing to July 15, 2009. (AR 37.) Plaintiff's application was denied initially and on reconsideration, and she timely requested a hearing. (AR 110-26.)

On January 10, 2012, ALJ Stephanie Martz held a hearing, taking testimony from Plaintiff and a vocational expert. (AR 34-75.) On February 24, 2012, the ALJ issued a decision finding Plaintiff not disabled. (AR 18-29.)

Plaintiff timely appealed. The Appeals Council denied Plaintiff's request for review on March 5, 2013 (AR 1-7), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## JURISDICTION

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

//

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found Plaintiff had not engaged in substantial gainful activity since she applied for benefits. (AR 20.)

At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found Plaintiff's lumbar degenerative disc disease, depression, anxiety disorder (incorporating both anxiety and PTSD) and alcohol abuse (in remission) severe. (AR 20-21.) She found that Plaintiff's carpal tunnel syndrome was not severe. (AR 20-21.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Plaintiff's impairments did not meet or equal the criteria of a listed impairment. (AR 21-22.)

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found Plaintiff capable of performing light work, with the ability to lift/carry ten pounds frequently and twenty pounds occasionally, and the ability to sit/walk/stand for about six hours each in an eight-hour day (with a sit/stand option at one-hour intervals). She found that Plaintiff has unlimited ability to climb ramps and stairs, balance, crawl, and kneel, but she can only occasionally stoop, crouch, and climb ladders, ropes, or scaffolds. She can understand, remember, and carry out non-complex well-learned instructions and tasks. She also has the ability to have brief and occasional contact with others. (AR 22-27.)

With that assessment, the ALJ found Plaintiff able to perform her past relevant work as a polisher. (AR 27-28.) The ALJ also found, in the alternative, that Plaintiff was capable of adjusting to other work exists in significant levels in the national economy, including small products assembler and electronics worker. (AR 28-29.) The ALJ, therefore, concluded Plaintiff was not under a disability at any time since her application date. (AR 29.)

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the ALJ erred in assessing her credibility; opinions provided by two treating therapists, Anne Imbs, MSW, and Jean Weng, LMHP, and two examining psychologists, Richard Washburn, Ph.D., and George Ankuta, Ph.D.; and a lay statement provided by her daughter. The Commissioner argues that the ALJ's decision is supported by substantial evidence and should be affirmed.

Credibility

The ALJ cited five categories of evidence that undermine Plaintiff's credibility: (1) inconsistent objective medical evidence, (2) evidence suggesting Plaintiff's lack of motivation, (3) inconsistent hearing testimony, (4) her poor work history, and (5) inconsistent

daily activities. (AR 23-24.) Plaintiff contends that none of these reasons are clear and convincing grounds to discount her credibility. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (requiring an ALJ to provide clear and convincing reasons to reject a claimant's credibility, in the absence of evidence of malingering). The Court addresses each reason in turn.[2]

A.  Objective medical evidence

The ALJ described Plaintiff's medical records as "show[ing] little objective evidence of treatment for anything." (AR 23.) Plaintiff reported some back pain, which improved with physical therapy and did not require medication. (*Id*. (citing AR 373-75, 384-88).) Examining psychologist Dr. Ankuta found Plaintiff could think abstractly, had fair attention and concentration, and did not have any social limitations. (AR 23-24 (citing AR 378).) According to the ALJ, this objective evidence "shows that the claimant's condition is not as severe as she alleges." (AR 24.)

Plaintiff contends that the ALJ failed to consider the context of her treatment history, when construing her lack of treatment against her credibility. According to Plaintiff, the record shows that Plaintiff stopped taking her medication due to concern about potential side effects, that she "structured her lifestyle to minimize her symptoms" (Dkt. 19 at 8), and that her lack of insurance prevented exhaustive tests and treatments to "shed more light on the severity of [her] impairments" (Dkt. 19 at 9). None of these arguments is persuasive.

---

[2] The Commissioner curiously cites pattern jury instructions as a framework for understanding credibility determinations. *See* Dkt. 21 at 5, 12-13. The Court agrees with Plaintiff that this type of authority is not helpful in elucidating the proper standards applied to review of an ALJ's decision in a Social Security case. Dkt. 22 at 2.

First, Plaintiff cites evidence that she reported stopping an antidepressant due to concern about side effects (AR 373-74), but the ALJ cited evidence that her *back pain* was not treated with pain medication. Plaintiff's "explanation" regarding her decision to stop an antidepressant is thus irrelevant to the ALJ's analysis.

Second, Plaintiff's characterization of her back-pain accommodation overstates the evidence cited: she reported to an examining physician that her back pain had improved, and that when she does experience it, she takes frequent breaks and/or lies down. (AR 384.) That physician found Plaintiff capable of standing, walking, and sitting 6-8 hours per workday (AR 387-88), despite the amount of pain she described, which suggests that the physician did not interpret Plaintiff's description of her symptoms as requiring dramatic restructuring to minimize symptoms. Plaintiff has not shown that either the examining physician or the ALJ were unreasonable in construing Plaintiff's description of her pain symptoms as not disabling (and therefore inconsistent with her allegations).

Finally, Plaintiff cites no evidence that additional treatment or tests were warranted or recommended but unavailable to her due to her lack of insurance. Her briefing cites her untimely request for reconsideration of the Commissioner's initial determination (AR 107), which does not pertain to her medical conditions but serves only to provide a justification for an untimely request. Plaintiff did mention at the administrative hearing that her doctor was investigating another test available for her carpal tunnel syndrome, but she explained that she had previously not sought treatment because she "didn't think there was anything else" she could do for it. (AR 56.) This testimony does not establish that she lacked access to necessary treatment. Thus, Plaintiff has cited no evidence undermining the ALJ's finding that

her lack of treatment for carpal tunnel syndrome undermines the credibility of her testimony regarding the severity of those symptoms.

B.  Lack of motivation

The ALJ construed Plaintiff's tardiness for the administrative hearing (and her presentation as "completely at ease with the fact that she was late to her disability hearing") as suggesting "a lack of motivation rather than any physical or mental impairment." (AR 24.) The ALJ also noted that Plaintiff denied being late to medical appointments, but the evidence shows that she was "late to multiple appointments." (AR 24.)

Plaintiff argues that the ALJ's interpretation of her tardiness failed to account for her explanation that she left later than she planned for the hearing, due to her spending extra time preparing her makeup for the hearing. (AR 63-64.) Plaintiff contends that her explanation was consistent with evidence establishing Plaintiff's concern about acne and opinions regarding her limited insight. Dkt. 19 at 9. Even if Plaintiff's alternate interpretation is reasonable, however, she has not shown that the ALJ was unreasonable in construing Plaintiff's tardiness as evidence of lack of motivation. *See Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."). Evidence of lack of motivation or self-limiting behaviors is a valid reason to discount a claimant's credibility. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001).

C.  Hearing testimony

1.  Hypothetical job

The ALJ asked Plaintiff at the hearing what would be "hardest thing about"

REPORT AND RECOMMENDATION
PAGE -7

performing a solitary job such as laundry folder. (AR 59.) Plaintiff first responded that she could not perform that job because of her carpal tunnel syndrome symptoms, which make repetitive tasks difficult, and added that she might "possibly" struggle with "getting there." *Id.* The ALJ construed Plaintiff's first answer to be inconsistent with her allegations of disabling mental impairments, and with the treatment record showing lack of treatment and complaints related to carpal tunnel syndrome. (AR 24.)

Plaintiff argues that because the ALJ asked her to describe the "hardest thing" about performing this job, she prevented Plaintiff from providing a full answer and therefore should not have construed her first answer against her credibility. Dkt. 19 at 10. But, as noted by the ALJ, the medical evidence shows that Plaintiff rarely sought treatment for carpal tunnel syndrome symptoms and instead reported that she was doing fine in that respect (AR 385), and Plaintiff herself testified that she had no problems with folding laundry (AR 55), which the ALJ reasonably construed as inconsistent with Plaintiff's testimony that carpal tunnel symptoms would prevent her from performing a laundry-folding job. Even if Plaintiff's second answer, related to difficulty getting to a job, suggests interference due to a mental impairment, the ALJ did not err in construing Plaintiff's primary answer to be inconsistent and thus undermining her credibility.

2. Plaintiff's daughter

The ALJ found that Plaintiff's activities in caring for her daughter were inconsistent with her allegations of reduced functionality. (AR 24.) Plaintiff argues that her caretaking responsibilities were less strenuous than assumed by the ALJ, and were limited to providing food to her daughter if she was unable to get food herself. Dkt. 19 at 7.

REPORT AND RECOMMENDATION
PAGE -8

But the medical records cited by the ALJ show that Plaintiff reported in December 2010 that she had to take her daughter to "a lot of medical appointment[s]" (AR 400), which the ALJ reasonably construed as inconsistent with Plaintiff's hearing testimony that she does not leave her home very often due to fear (AR 50).

D.  Work history

The ALJ noted that Plaintiff

> has never worked except for several months over 1998 and 1999 and then again for several periods in 2004 to 2006, when she was required to work as part of WorkFirst. The claimant's allegation of disability is not credible given that she really has never worked, even when she was not claiming she was disabled.

(AR 24.) Plaintiff argues that the ALJ erred in relying on a poor work history to discredit her testimony because the ALJ "was required to give reasons why Plaintiff's explanation for her work history was not valid before finding her not fully credible." Dkt. 22 at 4. But Plaintiff's explanation for her work history did not particularly bolster her credibility: she stated that her job in 1999 ended because of transportation issues, which were complicated by her daughter's medical needs, and that she had struggled to work more recently (prior to her alleged onset of disability) due to depression and tardiness problems. (AR 46-49.) As the ALJ noted, Plaintiff worked minimally in the many years preceding her alleged onset of disability, and this poor work history predating alleged disability supports an adverse credibility determination. *See Albidrez v. Astrue*, 504 F. Supp.2d 814, 821-22 (C.D. Cal. 2007) ("An ALJ may properly consider a claimant's poor or nonexistent work history in making a negative credibility determination.").

//

E.  Daily activities

The ALJ cited Plaintiff's ability to attend to her personal care needs and activities of daily living on her own, care for and spend time with her daughter, engage in yardwork and household chores (such as cleaning, vacuuming, mopping, laundry, and dishwashing), prepare meals, drive, go for walks, use public transportation, watch television, shop for groceries, go outside alone, manage her own finances, and interact with friends as inconsistent with her allegations of disability. (AR 24.) Plaintiff contends that her activities were instead consistent with her allegations, because she was only able to perform them occasionally. Dkt. 19 at 5-7.

It is true that Plaintiff reported difficulty with completing some of the activities described by the ALJ at the hearing and in her application forms. (AR 50-58, 229-36.) Plaintiff reported to providers, however, that she was able to complete her activities of daily living and perform household chores, and she also reported performing excessive cleaning. (AR 277, 323, 378, 385.) It is reasonable to construe these activities as inconsistent with Plaintiff's allegations of physical limitations. (AR 234.) Furthermore, even if the ALJ erred in failing to account for Plaintiff's self-reported difficulties in completing her activities, she provided a number of other clear and convincing reasons to discount Plaintiff's credibility and thus her adverse credibility determination remains valid. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

<u>Opinion Evidence</u>

Plaintiff assigns error to the ALJ's assessment of opinions provided by acceptable and non-acceptable medical sources. Dkt. 19 at 11-20. Opinions provided by an acceptable

medical source can be rejected only for specific and legitimate reasons, but an ALJ can reject a non-acceptable medical source's opinion upon providing germane reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

A. Non-acceptable medical source opinions

Plaintiff's treating therapists Ms. Imbs and Ms. Weng provided opinions regarding her functioning, and the ALJ assigned little weight to them because their cognitive testing showed that Plaintiff had no cognitive functioning limitations, yet the therapists opined that Plaintiff had multiple marked and severe cognitive limitations. (AR 26.) The ALJ also found that Ms. Imbs and Ms. Weng relied on Plaintiff's self-report when assessing her social limitations, which is problematic in light of Plaintiff's lack of credibility. (*Id.*)

The ALJ's reasons to discount the therapists' opinions are germane. Ms. Imbs' and Ms. Weng's mental status exam findings were largely normal (AR 287, 432), particularly as to cognitive functioning, and another provider also indicated that Plaintiff had no cognitive impairments (AR 278), and yet the therapists opined that Plaintiff had multiple marked or severe cognitive limitations. (AR 285, 429-30.) The therapists' notes to support their opinions regarding social limitations also appear to be primarily recitations of Plaintiff's self-report. (*Id.*) These are legitimate reasons to discount the therapists' opinions. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148-49 (9th Cir. 2001).

B. Medical source opinions

The ALJ assigned little weight to the Dr. Washburn's opinion, but significant weight to the opinions of Dr. Ankuta and the State agency consultants. (AR 25-26.) The ALJ

discounted Dr. Washburn's opinion because his opinions regarding Plaintiff's social limitations relied upon her non-credible self-report. (AR 26.) Dr. Washburn himself admitted that he did not observe many of the symptoms that he described as causing Plaintiff's marked and severe social limitations. (AR 276, 278.) He did not cite his own clinical observations as support for his opinions, instead primarily citing Plaintiff's own self-report. (AR 276.) Thus, Dr. Washburn's reliance on Plaintiff's self-described symptoms undermines his opinion, because the ALJ properly found Plaintiff's testimony to lack credibility and Dr. Washburn did not support his opinions with his own observations. *See Bray v. Comm'r of Social Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009).

Plaintiff argues that the ALJ improperly relied on the opinions of Dr. Ankuta and the State agency consultants, because those opinions were not supported by the record. But Dr. Ankuta and the State agency consultants explained the basis of their opinions (AR 77-89, 91-105, 376-78), and Dr. Ankuta's opinion was rendered after an in-person evaluation and thus itself constitutes substantial evidence. *See Magallanes*, 881 F.2d at 753. Although Plaintiff cites authority holding that a non-examining provider's opinion cannot alone justify the rejection of an examining or treating provider's opinion (Dkt. 19 at 19), the ALJ in this case did not rely solely on contradictory State agency consultant opinions in order to reject treating/examining source opinions. (AR 25-27.) Thus, Plaintiff has failed to establish that the ALJ erred in assessing Dr. Ankuta's opinion or the opinions of the State agency consultants.

<u>Lay Evidence</u>

The ALJ considered a statement (AR 218-25) provided by Plaintiff's daughter, Tiana

Gaona. Tiana Gaona indicated that Plaintiff has many physical limitations as well as psychological limitations, which the ALJ found to be inconsistent with her description of Plaintiff's activities and medical history. (AR 27.) The ALJ also noted that although Tiana Gaona stated that Plaintiff does not take care of anyone, this statement is contradicted by other evidence showing that Plaintiff takes care of Tiana Gaona. (*Id.*) For these reasons, the ALJ assigned little weight to Tiana Gaona's report.

Plaintiff argues that the ALJ erred in discounting Tiana Gaona's statement because the reasons provided were not germane. *See Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996). Plaintiff points to evidence of record that is consistent with Tiana Gaona's statement (Dkt. 19 at 21), but does not establish that the ALJ erred in finding that the statement was inconsistent with "the medical evidence, which shows little treatment for [Plaintiff's] back, reported improvement with physical therapy, little medication, and fair attention and concentration." (AR 27.) Thus, although Plaintiff has posited an alternate view of the evidence, she has not shown that the ALJ's assessment of Tiana Gaona's statement is unreasonable or otherwise erroneous. Accordingly, the ALJ's assessment should be affirmed.

## **CONCLUSION**

For the reasons set forth above, this matter should be AFFIRMED. A proposed order accompanies this Report and Recommendation.

DATED this 3rd day of January, 2014.

Mary Alice Theiler
Chief United States Magistrate Judge